303 Ga. 305
FINAL COPY

S17A1709.  GRAVES v. THE STATE.

BOGGS, Justice.

Travis Lesean Graves was acquitted of armed robbery but found guilty of two counts each of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony in connection with the deaths of Antonio Smith and Delaine King.[1] His amended motion for new trial was denied, and he appeals, asserting as his sole enumeration of error the

[1] The crimes occurred on July 3, 2012. On September 18, 2012, a DeKalb County grand jury indicted Graves for two counts of malice murder, two counts of felony murder, two counts of aggravated assault, one count of armed robbery, and two counts of possession of a firearm during the commission of a felony. Graves was tried before a jury from January 27 to February 5, 2014, and the jury acquitted him of armed robbery but found him guilty on all remaining counts. He was sentenced to two consecutive terms of life imprisonment without the possibility of parole for malice murder, and two terms of five years to serve consecutive to the malice murder counts for possession of a firearm during the commission of a felony. Graves' amended motion for new trial was denied on April 21, 2017, his notice of appeal was filed on April 27, 2017, and the case was docketed in this Court for the August 2017 term. The case was submitted for decision on the briefs.
    In sentencing, the trial court properly merged the aggravated assault counts into the malice murder convictions, but also purported to merge the felony murder counts into the malice murder conviction. As the trial court acknowledged in its order on Graves' motion for new trial, these counts were instead vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993).

trial court's striking of alibi testimony for failure to give notice under OCGA § 17-16-5 (a). For the reasons that follow, we affirm.

Construed to support the verdict, the evidence showed that on July 3, 2012, Smith, King, and four others were at Smith's home on Willa Drive in DeKalb County, watching television. Shortly before 11:00 p.m., Graves knocked on the door seeking to buy drugs from Smith. Their conversation became an argument, then a physical struggle, and Graves declared, "F–k man, I'm fixing to kill all of y'all." Graves shot and killed Smith and King despite their offering him money and begging for their lives; the others escaped by hiding or jumping out of windows. Another witness approached the kitchen door of the home from outside when she heard gunshots, stumbled over a body, and saw a man, whom she described in detail, standing in the kitchen with his arm out, saying "You can get it too." She hid behind a car, then saw the same man come running from the house, and heard more gunshots.

Graves went to his mother's home, where a witness saw him enter the house "disoriented, like in shock," with blood on his shirt, pants, and shoes. According to this witness, Graves gave his mother some money, and said, "I did something." He arrived "in the wee hours," around 12:00, and left about an hour

later. Police interviewed the other occupants of Smith's house; one knew Graves personally and identified him as the shooter. Others identified the shooter as a man they knew as "Travis," whose sister was a reality television star. Three eyewitnesses identified Graves from a photo lineup, and four identified him in court.

On December 16, 2013, the State served on Graves' attorney a "State's Demand for Written Notice of Defendant's Intention to Offer a Defense of Alibi" pursuant to OCGA § 17-16-5. Graves did not respond. Before trial, Graves filed a "Certificate of Discovery" and a witness list identifying his mother as a witness, but she was never identified as an alibi witness.

At trial, Graves' mother testified that she was at work and not at home on the evening of the murders. Later, she testified that the witness who testified that Graves came home with blood on his clothes and spoke to her was not "a nice guy" and was not at her house that evening. During cross-examination, she denied repeatedly that the prosecutor had attempted to contact her by phone before trial. The State then asked her:

> Q. It's your testimony that you weren't at your home on the night of July 3rd and morning of July 4th, 2012?
> A. Yes.

3

Q. So because you weren't home, you can't say who was there that night, can you?
A. Yes.
Q. Yes, you can say?
A. I called and checked on my house.
Q. Okay. Who was there?
A. Ivory.
Q. Ivory was there?
A. Yes.
Q. Who else?
A. Makia (phonetic)
Q. Does she go by Kia?
A. Same name, ma'am.
Q. Okay, so Makia goes by Kia?
A. Uh-huh.
Q. Who else was there?
A. Travis.

The State immediately asked for a bench conference, and moved to strike the last answer regarding Graves being at his mother's house. After a bench conference, which was not reported, the trial court went back on the record and granted the motion in the presence of the jury:

> THE STATE: Your Honor, the State is requesting that the witness's response relative to Travis being at her house on July 3rd, 2012, be stricken from the record and the jury be instructed to disregard her answer as it related to Travis.
> THE COURT: Your motion is granted.

The record does not indicate, however, that the trial court expressly instructed the jury not to consider the testimony, either at the time of its ruling or in its

instructions to the jury on witnesses and witness credibility. Graves did not object on the record to the court's ruling.

After the jury was dismissed for the day, there was a discussion regarding whether the sidebar conference regarding the alibi had been placed on the record. The trial court summarized the earlier ruling for the record:

> During the course of her testimony, [Graves' mother] indicated that she knew that Travis was at her house the evening of July 3rd into July 4th, which would establish an alibi. The defense did not provide any notice of its intent to present alibi testimony from any witness, so I ordered that her statement that he was at her house be stricken from the record.

Graves again did not object to the ruling.

After conviction and an initial motion for new trial, Graves amended his motion to assert this ruling as error. The trial court denied the amended motion for new trial, and Graves appeals.

1. Although Graves has not raised the sufficiency of the evidence in his appeal, we note that the evidence was more than sufficient to support the jury's guilty verdicts under <u>Jackson v. Virginia</u>, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and indeed was overwhelming, as discussed below.

2. In his sole enumeration of error, Graves complains that the trial court

erred in excluding his mother's testimony.

As a preliminary matter, we question whether Graves has any ground for complaint in the absence of a direct instruction by the trial court to the jury that it must disregard the testimony. While the trial court, in the presence of the jury, informed the State, "Your motion is granted," it did nothing more, and neither the State nor Graves requested any further action. The better practice in such a circumstance is to give a curative instruction to the jury, to avoid any doubt as to whether the jury understood the trial court's brief statement as an instruction that it must disregard the testimony and could not consider it for any purpose. This would avoid the possibility that Graves received the benefit of his mother's testimony, despite the grant of the State's motion.

Additionally, the State asserts that this enumeration of error should be reviewed only for plain error because Graves did not object to the trial court's ruling. Graves responds that there was no need to "re-object" because there was an objection by the State and a ruling by the trial court. But we need not address this issue because any error was harmless, particularly in light of the overwhelming evidence of Graves' guilt. Multiple witnesses, including one who knew Graves personally, identified him from photo lineups and at trial as the

man who shot the victims. Witnesses also testified that neither victim was armed. Moreover, the alibi testimony was of limited probative value, because it specified no time at which Graves was at his mother's house, and a witness presented by the State testified that Graves was indeed at his mother's house that night, after the time of the murders.[2] We agree with the trial court that the error, if any, was harmless. See United States v. Azmat, 805 F3d 1018, 1041 (VII) (C) n.8 (11th Cir. 2015) (applying analogous Fed. R. Evid. 103 (b)).

Judgment affirmed.  All the Justices concur.

---

[2] The trial court charged the jury that it should attempt to reconcile the testimony of all witnesses, if possible.

Decided March 15, 2018.

Murder. DeKalb Superior Court. Before Judge Johnson.

Long D. Vo, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Gerald Mason, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General, for appellee.